UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FADUMA M. FARAH,

    Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

    Defendants.

Case No. 16cv1175 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Faduma M. Farah alleges violations of her constitutional rights in an investigation that led to her indictment by a federal grand jury and subsequent arrest, her trial on two of the counts in which she was charged, and her acquittal by a jury on those two counts. She sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss F. Farah's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 41. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 47.

The investigation at the core of F. Farah's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The

investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle District of Tennessee in 2010-2011 ("Tennessee Case"). F. Farah alleges that Weyker and Bandemer fabricated evidence about her and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing her arrest and detention without probable cause.

Nineteen of her co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments. F. Farah, coordinating with the other plaintiffs represented by her counsel, opposed the motions. *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 52; GBBS Pls.' Opp. to DOJ Mot. to Dismiss, Dkt. No. 55.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints. Dkt. No. 62. Pursuant to that order, F. Farah filed a Second Amended Complaint [Dkt. No. 63] ("SAC"), which is thus the operative complaint subject to these Rule 12 motions.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III. ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in F. Farah's Second Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

At some point before 2010, "Assistant U.S. Attorney [for the Middle District of Tennessee] Van Vincent and others made contact with Farah," asking her questions and at least once "discuss[ing] putting Farah in witness protection if she would testify against [other] individuals." SAC ¶ 16; *see also* SAC ¶¶ 17-19. She "declined as she did not possess truthful information relating to criminal activity of the individuals . . . ." SAC ¶ 16.

On November 8, 2010, F. Farah was arrested by Weyker and federal agents after she was indicted in a First Superseding Indictment ("FSI") in the Tennessee Case. SAC ¶¶ 20, 34. The indictment charged her in four counts. SAC ¶ 34; *see also* FSI, *United States v. Farah*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010). Two counts alleged participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). Count 11 alleged recruitment and harboring from December 2005 through June 2008 of a minor (Jane Doe One) to engage in commercial sex. Count 23 alleged that on August 21, 2009, F. Farah made false statements in an I-485 Application to Register Permanent Residence or Adjust Status with United States Citizenship and Immigration Service.

---

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

F. Farah was initially placed in custody but on November 12, 2010, was ordered released on conditions. *See* SAC ¶¶ 24-28; *United States v. Farah*, No. 3:10cr260, Dkt. No. 202 (M.D. Tenn. Nov. 12, 2010).

The indictment's "conspiracy as to sex trafficking counts against Farah only involved *one* female listed as 'Jane Doe 1.'" SAC ¶ 39. Jane Doe One supposedly identified Farah in a photographic show-up conducted by Weyker on June 24, 2010. SAC ¶¶ 40-42. Weyker was the lead investigator on the case. SAC ¶ 33. The district court later found that this show-up "was unduly suggestive." SAC ¶ 43 (citing Dkt. No. 1392 in the Tennessee Case docket). The court nonetheless denied F. Farah's suppression motion because "Jane Doe One's identification of Farah has sufficient characteristics of reliability to be admissible." *United States v. Farah*, No. 3:10cr260, Dkt. No. 1392, at 5 (M.D. Tenn. Feb. 15, 2012). F. Farah and Jane Doe One do not know each other. SAC ¶ 52.

On February 16, 2012, the district court granted a motion to sever multiple counts, including Count 23, from the upcoming trial. *United States v. Farah*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012); *see also id.*, Dkt. No. 1589 (M.D. Tenn. Feb. 23, 2012); SAC ¶ 38. The count "was later dismissed." SAC ¶ 38.

On March 22, 2012, a jury was empaneled for a trial in the Tennessee Case. On March 26, 2012, the district court granted the government's motion to dismiss Count 11 as to F. Farah. *United States v. Farah*, No. 3:10cr260, Dkt. No. 2138 (M.D. Tenn. Mar. 26, 2012); SAC ¶ 37.

Jane Doe One did not testify at the trial "because, upon information and belief, she was unfit or incredible and/or refused to testify." SAC ¶ 44. "Instead, the centerpiece of Weyker's fabricated case against Farah pivoted to Jane Doe Five," despite the fact that the indictment did not contain any allegations connecting F. Farah to Jane Doe Five. SAC ¶¶ 45-46. Before her

4

arrest, F. Farah had only known of but did not directly know Jane Doe Five. SAC ¶ 53. Yet Jane Doe Five's testimony at trial implicated F. Farah. *See* SAC ¶¶ 47-49. In a much later Sixth Circuit opinion, an appellate court judge wrote that Jane Doe Five "may be . . . unworthy of belief." *United States v. Fahra*, 643 Fed. Appx. 480, 484 (6th Cir. 2016); *see* SAC ¶ 55.

With regard to the alleged sex-trafficking conspiracy, "[t]here was never any such conspiracy and Farah never engaged in any attempt to have Jane Doe One or Jane Doe Five or any other individual engage in commercial sex." SAC ¶ 50. "Fabricated evidence formed the bases of these false allegations against Farah." *Id.*

In May 2012, the jury returned verdicts. The jury acquitted Farah on both counts for which she was tried: Counts 1 and 2. *See* SAC ¶ 54; *United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. Dec. 19, 2012). The jury also fully acquitted five other defendants and convicted three defendants on some counts but acquitted them on others. *Adan*, 913 F. Supp. 2d at 560. After the trial, the district court granted the three convicted defendants' Federal Rule of Criminal Procedure 29 motions for judgments of acquittal on the basis of a variance, and the government appealed that order. *See id.* at 579. On March 2, 2016, the Sixth Circuit affirmed the district court's grant of the Rule 29 motions. *Fahra*, 643 Fed. Appx. at 481.

After that trial, in August 2012, a Third Superseding Indictment was filed. That indictment reasserted Count 23 against F. Farah but did not charge her in any other counts. *United States v. Farah*, 3:10cr260, Dkt. No. 2701 (M.D. Tenn. Aug. 22, 2012).

After the Sixth Circuit issued the opinion affirming the grant of the Rule 29 motions, the government moved to dismiss all remaining counts against all remaining defendants, and the district court granted the motion. *See United States v. Adan*, No. 3:10cr260, Dkt. No. 3798 (M.D. Tenn. Mar. 10, 2016).

5

Like Osman, F. Farah alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless and that Weyker fabricated "the overwhelming majority of the material evidence supporting her indictment," SAC ¶ 62; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, *e.g.*, SAC ¶¶ 58, 60, 69; that Weyker was motivated to falsify evidence by a desire for professional success, *see* SAC ¶ 33; and that indications of Weyker's fabrication included her rough notes, SAC ¶ 73. Also like Osman, Farah's complaint repeatedly cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. SAC ¶¶ 47, 55-57, 63 n.1, 67, 74-75.

## IV.  SUMMARY OF ARGUMENTS

A summary of the parties' arguments is included in Section IV of the Court's opinion in *Yusuf v. Weyker, et al.*, No. 16cv1012, filed simultaneously herewith. F. Farah is represented by the same counsel as Yusuf.

## V.  LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), F. Farah's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. Her complaint is that "[b]ut for the false testimony and other erroneous evidence falsely manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Farah's liberty." SAC ¶ 1; *see also* SAC ¶¶ 69-70. In other words, she complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to F. Farah's. *Id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, because she challenges her pretrial

6

detention, her claim is under the Fourth Amendment. In contrast, if she had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, her claim would then be analyzed under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support *both a conviction and any ensuing incarceration* does so under the Due Process Clause . . . ." *Id.* (emphasis added) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979), and *Thompson v. Louisville*, 362 U.S. 199, 204 (1960)). Although F. Farah did stand trial on two counts, she was acquitted by the jury. She then remained on pretrial detention conditions as she awaited trial on Count 23. She thus challenges pretrial detention, not incarceration or supervision imposed pursuant to a sentence, and her claims still fall under the Fourth Amendment. *Compare with Jackson*, 443 U.S. at 316 (describing the due process guarantee "that no person shall be made to *suffer the onus of a criminal conviction* except upon sufficient proof") (emphasis added), *and Thompson*, 362 U.S. at 206 (holding that it violates due process "to convict and punish a man without evidence of his guilt"). Her claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[3]

Under the Fourth Amendment analysis, the Court must decide whether F. Farah plausibly alleges that the Defendants violated her right to be free from unreasonable seizure by arresting and detaining her without arguable probable cause, based on fabricated evidence.[4]

---

[3] As explained in a footnote in the Court's simultaneously filed order in *Yusuf v. Weyker, et al.*, No. 16cv1012, the attempt to distinguish *Albright* in her opposition papers, which were filed without the benefit of the *Manuel* decision, is not persuasive in light of the *Manuel* Court's clear interpretation of *Albright*. *See Manuel*, 137 S. Ct. at 918.

[4] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether F. Farah's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*,

787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (quoting *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

### a. Analysis of F. Farah's Claim Under the Fourth Amendment

In considering whether F. Farah plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

F. Farah's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and the related appellate decision in *Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016). In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and F. Farah cite. *See* Osman Op. 25-33. For instance, both Osman and F. Farah cite to the Tennessee Case district court's pretrial memorandum at Dkt. No. 1392 concerning photographic show-ups conducted by Weyker, in which the court denied F. Farah's motion to suppress Jane Doe One's identification of her. In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over the *Iqbal* plausibility line. The Court notes that none of these judicial statements refer even obliquely to Bandemer. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of

9

the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. F. Farah's case, however, is different.

Weyker and Bandemer argue that even if F. Farah plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that she was also indicted in a non-trafficking-related charge defeats her Fourth Amendment claim. Weyker and Bandemer argue that she fails to plausibly allege that there was not probable cause to arrest her on Count 23. *See* DOJ Br. 65-68. They point out in their reply papers that F. Farah and the other plaintiffs represented by the same counsel fail to address this argument at all. DOJ Reply 31-32.

F. Farah's complaint does not allege that there was no probable cause to indict her on Count 23. As noted, her opposition papers did not respond to Weyker and Bandemer's argument that her Fourth Amendment claim fails in light of that count. Count 23 identified particular statements that F. Farah was alleged to have made falsely in her I-485 application, including that "she had not received public assistance" even though she had received Section 8 housing. *See* FSI 54-55; *see also* SAC ¶ 85 (acknowledging that she had been receiving Section 8 housing benefits). The grand jury's indictment of her in that charge "conclusively determines the existence of probable cause" on that count, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictment in that count was tainted by fabrication of evidence.[5] Her more general, conclusory allegations—*e.g.*, that she would not have been indicted or detained absent fabricated evidence, SAC ¶¶ 69-70—cannot overcome the hurdle posed by her indictment in this count. Finally, the Court cannot reasonably

---

[5] The Court further notes that Farah's ex-husband pleaded guilty to a similar charge on similar facts in Count 22. *See United States v. Adan*, No. 3:10cr260, Dkt. No. 2602 (M.D. Tenn. June 25, 2012).

conclude from the government's eventual dismissal of all charges against all remaining defendants— after an adverse appellate decision affirming the grant of Rule 29 motions on the basis of a variance—that there was no probable cause to indict F. Farah on any counts at all.

Therefore, F. Farah's complaint must fail. Even if there were no probable cause to arrest her for the sex-trafficking-related charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). She therefore "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888; *see also Keil*, 661 F.3d at 986.

Defendants Weyker and Bandemer are entitled to qualified immunity. F. Farah has failed to plausibly allege a constitutional violation. Moreover, as to Bandemer, there are no well-pleaded facts that would support an inference that he directly fabricated evidence.

### b. Supervisory Liability

F. Farah also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. She alleges that they were deliberately indifferent to or authorized Weyker's and Bandemer's alleged violations of her constitutional rights. *See* SAC ¶¶ 76-77.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the

supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that F. Farah has not adequately alleged a constitutional violation by Weyker or Bandemer, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, F. Farah's complaint, which is very similar to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, she alleges that Bandemer and the John Does had supervisory responsibility over Weyker, *see, e.g.*, SAC ¶¶ 8, 99; that the investigation was very important to the St. Paul Police Department vice unit, SAC ¶ 33; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on the February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, *id.* ¶¶ 74-75, 77. Like Osman, F. Farah cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*,

913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of her supervisory liability notice allegations. SAC ¶¶ 74-75.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, F. Farah does not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

F. Farah sues St. Paul as well as Bandemer and the John Does in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread,

13

[and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

F. Farah does not adequately support her conclusory municipal liability allegations. She does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. She does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate her rights. Nor does she allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. She also does not plausibly allege any such *custom* because, among other reasons, she has not adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because F. Farah's complaint fails to plausibly allege a violation of her constitutional rights. The Court grants the Defendants'

motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 41] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 47] is GRANTED.

3. Plaintiff Faduma M. Farah's Second Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017            s/ Joan N. Ericksen
                                                       JOAN N. ERICKSEN
                                                       United States District Judge